IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| YONATHAN MELAKU, ) | |
| ) | |
| Petitioner, ) | |
| ) | Criminal Case No. 1:12-cr-00027 |
| v. ) | Civil Case No. 1:16-cv-00698 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER

This matter comes before the Court on Petitioner Yonathan Melaku's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("2255 Motion"). Dkt. 75. As argument would not aid in the decisional process, this matter is now ripe for disposition. Accordingly, the Court will decide the 2255 Motion on the papers. Fed. R. Civ. P. 78 (b); Local Civil Rule 7(J). Considering the 2255 Motion, the Supplemental Memorandum filed by Petitioner's counsel, Dkt. 99, the Supplemental Memorandum filed by the Government, Dkt. 100, and Petitioner's Reply, Dkt. 101, the Court DENIES the 2255 Motion for the reasons stated below.

I. Background

On June 23, 2011, a criminal complaint and affidavit were filed against Petitioner. Dkt. Nos. 1; 3. An arrest warrant was issued and returned executed on November 30, 2011. Dkt Nos. 4; 5. The Government filed a Motion to Extend Time to Indict Petitioner, which the Court granted, thereby extending the Government's time period to indict to February 8, 2012. Dkt. Nos. 13; 14. Petitioner then signaled his intent to plead guilty and a change of plea hearing was set for January 26, 2012. At the change of plea hearing, Petitioner waived the filing of an indictment. Dkt. 16. Petitioner then pleaded guilty to the three-count Information filed against him in open court, which

charged that: Petitioner 1) "injur[ed] property of the United States by shooting with a firearm and causing damage in excess of $1,000," in violation of 18 U.S.C. § 1361; 2) used, carried, and discharged a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and 3) attempted to injure veterans' memorials on property of the United States, in violation of 18 U.S.C. § 1369. Dkt. 17. The Court accepted the plea agreement. Dkt. 18.

On January 11, 2013, the Court sentenced Petitioner to 120 months of imprisonment on Count One, 120 months of imprisonment on Count Two, and 60 months of imprisonment on Count Three. Dkt. Nos. 63; 64. The Court ordered that these three terms of imprisonment were to run consecutively totaling 300 months of imprisonment. *Id.* The Court imposed a total of ten years of supervised release and also imposed $111,215.98 in restitution. *Id.* On January 25, 2013, Petitioner filed a Consent Motion to Amend or Correct the Sentence, which the Court granted on February 4, 2013. Dkt. Nos. 66; 67. Accordingly, the Amended Judgement reflects a change to the terms of supervised release; the Court ordered that Petitioner serve three years of supervised release on Count One, five years of supervised release on Count 2, and three years of supervised release on Count Three. Dkt. 68. These terms were ordered to run concurrently for a total term of five years of supervised release. *Id.*

On June 21, 2016, Petitioner filed the instant 2255 Motion, Dkt. 75, which the Government moved to dismiss, Dkt. 79. In consideration thereof, the Court held Petitioner's 2255 Motion in abeyance pending decisions on several cases before the Supreme Court of the United States and the United States Court of Appeals for the Fourth Circuit regarding the application of *Johnson v. United States*, 135 S. Ct. 2551 (2015), and its progeny. Dkt. 80. On August 9, 2017, the Court found the matter ripe for disposition, lifted the stay, and ordered the parties to file supplemental briefing. Dkt. 82. The parties complied. Dkt. Nos. 83-85. Petitioner moved for a stay pending

the resolution of *Sessions v. Dimaya*, 137 S. Ct. 31 (2016), as Petitioner believed it would determine whether *Johnson* applied to the residual clause of 18 U.S.C. § 924(c)(3)(B). Dkt. 83. In response, the Government argued that the 2255 Motion was untimely and requested its dismissal. Dkt. 84. On September 12, 2017, the Court first denied the instant 2255 Motion, deeming it untimely as *Johnson* only addressed the residual clause in the Armed Career Criminal Act and did not announce any right retroactively applicable to 18 U.S.C. § 924(c). Dkt. 86, 6. Therefore, the Court granted the Government's Motion to Dismiss. *Id.* The Court also expressly declined to issue a Certificate of Appealability. *Id.* Yet, on October 16, 2017, Petitioner filed a Notice of Appeal. Dkt. 87.

On March 31, 2020, the Fourth Circuit vacated and remanded the matter and entered a judgment, observing that it could not ignore the Government's waiver of a limitations defense and finding that reasonable jurists could differ as to whether "willfully injuring federal property" constituted a valid predicate offense under the "force clause." Dkt. 93, 2. The judgment took effect May 26, 2020. Dkt. 96. This Court then ordered that counsel assist Petitioner in litigating his 2255 Motion and ordered supplemental briefing. Dkt. Nos. 97; 98. Petitioner's counsel filed a Supplemental Memorandum on September 23, 2020, Dkt. 99, and the Government followed suit on October 5, 2020. Dkt. 100. Petitioner filed a Reply on October 8, 2020. Dkt. 101.

## II. Standard of Review

"A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court 'to vacate, set aside or correct the sentence.'" *McGhee v. United States*, Civil No. 4:14-cv-140, Crim. No. 4:12-cr-10, 2016 WL 1626613, at *2 (E.D. Va. Apr. 20, 2016) (quoting 28 U.S.C. § 2255(a)).

> To obtain such relief, a petitioner must prove by a preponderance of the evidence that his sentence or conviction was "imposed in violation of the Constitution or

laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack."

*Id.*

### III. Analysis

#### A. Parties' Positions

In his Supplemental Memorandum, Petitioner argues that an offense under 18 U.S.C. § 1361 categorically fails to qualify as a crime of violence pursuant to 18 U.S.C. § 924(c). Dkt. 99, 3-5. For that reason, Petitioner requests that his conviction on Count Two be vacated and that he be resentenced on Counts One and Three. *Id.* at 5-6. In response, the Government argues that Petitioner's 2255 Motion should be denied because a conviction pursuant to 18 U.S.C. § 1361 violates the "still-valid 'force clause'" based upon a number of reasons. Dkt. Nos. 100, 2 and 7-22. Alternatively, in the event the Court grants Petitioner habeas relief, then the Government requests a resentencing. *Id.* at 21. In reply, Petitioner asserts that the Government's arguments are conclusory and cites to *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019). Dkt. 101, 2 (describing the amount of force required for crimes against property to qualify as a "crime of violence"). The parties more specific arguments are addressed below.

#### B. Legal Framework

At issue here is Petitioner's 924(c) conviction. Section 924(c) "prescribes criminal penalties for anyone who discharges a firearm 'during and in relation to any crime of violence.'" *United States v. Evans*, 848 F.3d 242, 245 (4th Cir. 2017) (quoting 18 U.S.C. 924(c)(1)(A)(iii)). "Crime of violence" is defined as any felony that either:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

4

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subpart A is colloquially known as the "force clause" whereas Subpart B is known as the "residual clause." *United States v. Taylor*, 979 F.3d 203, 207 (4th Cir. 2020). Because Subpart B has been deemed unconstitutionally vague, *United States v. Davis*, 139 S. Ct. 2319 (2019), Petitioner's § 924(c) conviction can only be upheld if this Court finds that a violation of 18 U.S.C. § 1361 constitutes a "crime of violence" under the still viable "force clause."

Generally, to determine whether the predicate offense is a "crime of violence under the force clause, courts must employ the 'categorical' approach." *Taylor*, 979 F.3d at 207 (citing *Descamps v. United States*, 570 U.S. 254, 258 (2013)). "Pursuant to the categorical approach, a court, 'focuses on the elements of the prior offense rather than the conduct underlying the conviction.'" *Id.* (quoting *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013)). "When the elements of an offense encompass both violent and nonviolent means of commission—that is, when the offense may be committed without the use, attempted use, or threatened use of physical force—the offense is not 'categorically' a 'crime of violence.'" *Id.*

However, when a criminal statute is divisible, "courts employ a modified categorical approach, in which they may examine a limited class of documents, including indictments and jury instructions, to determine which part of the statute the defendant violated." *Prayer v. United States*, No. 2:11-cr-58, 2020 WL 5793427, at *2 (E.D. Va. Sept. 28, 2020) (citing *Descamps*, 570 U.S. at 257). "Assessing a criminal statute's divisibility is a matter of statutory interpretation and requires a court to decide whether Congress has 'list[ed] multiple elements disjunctively' or simply 'enumerate[d] various factual means of committing a single element.'" *Dorsey v. United States*,

5

Civil No. 1:16-cv-738, Crim No. 1:99-cr-203, 2018 WL 3947914, at *3 (E.D. Va. Aug. 21, 2019) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

### C. Application

It is undisputed that Petitioner's 924(c) conviction was predicated on his violation of 18 U.S.C. § 1361. Whether a violation of 18 U.S.C. § 1361 constitutes a "crime of violence" under the still viable "force clause" is a matter of first impression in this District and Circuit.

The Court bears the following well-settled principles in mind:

> [w]hen engaging in statutory interpretation, [courts are to] "first and foremost strive to implement congressional intent by examining the plain language of the statute." *United States v. Passaro*, 577 F.3d 207, 213 (4th Cir.2009). "[A]bsent ambiguity or a clearly expressed legislative intent to the contrary," [courts] thus give a statute its "plain meaning." *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993). A statute's plain meaning is determined by reference to its words' "ordinary meaning at the time of the statute's enactment." *United States v. Simmons*, 247 F.3d 118, 122 (4th Cir.2001). [Courts] remain mindful that in "interpreting the plain language of a statute, we give the terms their ordinary, contemporary, common meaning, absent an indication Congress intended" the statute's language "to bear some different import." *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131 (4th Cir.2009) (quotations omitted).

*United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010).

Delving into the statutory text, 18 U.S.C. § 1361 provides that:

> [w]hoever willfully injures *or* commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses, shall be punished as follows:
>
> If the damage or attempted damage to such property exceeds the sum of $1,000, by a fine under this title or imprisonment for not more than ten years, or both; if the damage or attempted damage to such property does not exceed the sum of $1,000, by a fine under this title or by imprisonment for not more than one year, or both.

18 U.S.C. § 1361 (emphasis added).

At first blush, it appears that the statute contains two elements: prohibiting the 1) willful injury or depredation against 2) government property. *See id.* The Government contends that the Court need not determine whether the statute is divisible because both "willfully injur[ing]" or "commit[ing] any depredation" requires "the use, attempted use, or threatened use of physical force[.]" Dkt. 100, 8.

However, because the first element of § 1361 is stated in the disjunctive, the Court finds that the statute is divisible. Therefore, the Court deploys the modified categorical approach, focusing on the "willfully injures" prong. *Descamps*, 570 U.S. at 257. In so doing, the Court examines the three-count criminal Information. Dkt. 17. Petitioner's 18 U.S.C. § 1361 violation concerns "[i]njury to property of the United States by shooting with a firearm and causing damage in excess of $1,000." *Id.*

As the statute does not define "willfully injure," this Court is obliged to engage in a plain language analysis. In the Government's view, it is "a matter of both plain meaning and common sense that one cannot 'injure' property without application of physical force." Dkt. 100, 8-9. The Court need not necessarily accept such conclusions and thus consults the plain meaning of the text. According to Black's Law Dictionary, "injure" is defined as:

> 1. [t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice. See WRONG. 2. Scots law. Anything said or done in breach of a duty not to do it, if harm results to another in person, character, or property. • Injuries are divided into real injuries (such as wounding) and verbal injuries (such as slander). They may be criminal wrongs (as with assault) or civil wrongs (as with defamation). 3. Any harm or damage. • Some authorities distinguish harm from injury, holding that while harm denotes any personal loss or detriment, injury involves an actionable invasion of a legally protected interest. *See* Restatement (Second) of Torts § 7 cmt. a (1965). — injure, vb. — injurious, adj.

*Injury, Black's Law Dictionary* (11th ed. 2019).

And according to Merriam-Webster, "injure" means

      a. to inflict bodily hurt on
      b. to impair the soundness of
      c. to inflict material damage or loss on.

*Injure*, *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/injure. These definitions suggest that the "injury" element requires the use, attempted use, or threatened use of force.

In further support of the Government's argument, the Government refers to *Johnson v. United States*, 559 U.S. 133 (2010) [hereinafter "*Curtis Johnson*"], regarding the quantum of force required to violate the statute at issue, and *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019), with respect to injury-to-property crimes qualifying as crimes of violence. Dkt. 100, 9-10. In *Curtis Johnson*, the Supreme Court indeed held that a violation of the "force clause" requires "physical force." *See generally*, *Curtis Johnson*, 559 U.S. 133 (interpreting the force clause in the Armed Career Criminal Act). The Armed Career Criminal Act force clause defines a "crime of violence" as one that "has an element the use . . . of physical force against the person of another," without reference to *injury to property*. 18 U.S.C. § 922 (e)(2)(B). The Supreme Court held that "'physical force' requires the use of 'violent force,' which necessarily 'connotes a substantial degree of force.'" *Evans*, 848 F.3d at 245 (quoting *Curtis Johnson*, 559 U.S. at 140). Further explaining what "physical force" entails, the Supreme Court found that "[i]n order to qualify as 'violent physical force,' the degree of force employed must be 'capable of causing physical pain or injury to another person.'" *Id.* The Fourth Circuit has applied this analysis of "physical force" to the "force clause" contained in 18 U.S.C. § 924(c). *See, e.g.*, *United States v. Lucas*, __ Fed. App'x __, 2020 WL 7090720, at *4 (4th Cir. Dec. 4, 2020).

However, *Mathis* does not stand for the broad proposition the Government argues it does. In *Mathis*, the Fourth Circuit evaluated whether Hobbs Act robbery, 18 U.S.C. § 1951, constituted

8

a "crime of violence." 932 F.3d 242. Section 1951 defined "robbery" as taking "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his . . . property." 18 U.S.C. § 1951. Considering Hobbs Act robbery "committed by means of causing fear of injury," the Fourth Circuit found *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016), instructive. *Mathis*, 932 F.3d at 266. In *McNeal*, the Fourth Circuit held that "federal bank robbery, which may be committed by 'force and violence, or by intimidation,' 18 U.S.C. § 2113(a) (emphasis omitted), qualifies as a crime of violence under the force clause [contained in § 924(c)]." *Id.* There, the Fourth Circuit found that "the use of intimidation" necessarily "involves the threat to use [physical] force." *Id.* (quoting *McNeal*, 818 F.3d at 153). Contemplating that holding, the *Mathis* Court observed that the federal bank robbery statute was not materially different from the Hobbs Act robbery statute, because "fear of injury," used in the Hobbs Act robbery statute, and "intimidation," used in the federal bank robbery statute, were synonymous. *Id.* The Fourth Circuit then looked to the § 924(c) force clause and the Hobbs Act robbery statute and noted that neither statute "dr[ew] any distinction between tangible and intangible property." *Mathis*, 932 F.3d at 266. Thus, the Fourth Circuit held that it did not differentiate between threats of injury to either category of property. *Id.* This Court notes that the *Mathis* holding was narrow; the Fourth Circuit construed an injury to tangible or intangible property in the context of a Hobbs Act robbery which is an offense against *the person,* not an offense against *property. Id.* Thus, the Government's reliance on *Mathis* is unavailing.

Turning to the scienter element, the Fourth Circuit has previously observed that "the requisite *mens rea* is crucial in the force analysis." *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019) (citing *United States v. Castleman*, 572 U.S. 157, 170 (2014)). More specifically, "a crime requiring the 'intentional causation' of injury requires the use of physical force." *Id.* It is

9

important to note that *Battle* described a violation of a Maryland law concerning assault with intent to murder, and *Castleman* described a violation of Tenn. Code Ann. 39-13-111(b), concerning intentionally or knowingly causing bodily injury. *Battle*, 927 F.3d 160 (involving the force clause in 18 U.S.C. § 924(c)); *Castleman*, 572 U.S. 157 (involving the force clause contained in 18 U.S.C. § 922(g)(9)). Although these are crimes against the person, this analytical perspective remains tenable as *Castleman* has been applied to cases involving the analysis of whether a crime constitutes a crime of violence pursuant to the § 924(c) force clause, which contemplates not just injury to people but to property. 18 U.S.C. § 924(c)(3). Because Petitioner's particular conviction pursuant to § 1361 required "willful[] injur[y]" to government property, it required "the 'intentional causation' of injury" to government property, thereby "require[ing] the use of physical force." *Battle*, 927 F.3d at 166. Thus, Petitioner's 18 U.S.C. § 1361 conviction is indeed a crime of violence.

As to Defendant's argument that the statute can be violated by conduct that does not qualify as a "crime of violence," the Government contends that is not supported by the particular circumstances of this case because Petitioner was subject to the heightened penalty range. Dkt. Nos. 99, 4-5; 100, 14-16. Thus, in the Government's view, the damage threshold is now an element of the crime. Dkt. 100, 15 (citing *Burrage v. United States*, 571 U.S. 204, 210 (2014)). The Court observes that "'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime." *Alleyne v. United States*, 570 U.S. 99, 111 (2013) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 478 (2000)). Here, if the damage to Government property exceeded $1,000, an individual is subject to greater penalties, and for damage to Government property that did not exceed that sum, an individual is subject to lesser penalties. *See* 18 U.S.C. § 1361. Accordingly, the statute contains a third evidentiary consideration; a damage element,

which further supports that Petitioner's violation of 18 U.S.C. § 1361 requires the use, attempted use, or threatened use of force.

Although the Court is not required to consult the statute's legislative history as the plain language of the statutory text is clear in this context, the Court observes that the statute's legislative history provides further support for the Court's conclusion. 18 U.S.C. § 1361 was originally enacted in 1948. Law of June 5, 1948, ch. 645, 62 Stat. 764. The only textual amendments since the statute's enactment were to the damage thresholds and corresponding fines. *See* 18 U.S.C. § 1361. In addition, when Congress passed the Violent Crime Control and Law Enforcement Act of 1994, Congress implemented a statute of limitations for bringing such a charge and referred to a violation of 18 U.S.C. § 1361 and certain other statutes as "terrorism offenses." *See* Pub. L. No. 103–322, 108 Stat 1796.

Next, the Court considers the specific examples advanced by Petitioner of conduct that runs afoul of 18 U.S.C. § 1361 but does not constitute a "crime of violence," namely vandalism[1] and digging on government land. Dkt. 99, 4-5. Petitioner cites to the following authority wherein defendants were either charged with violations of or convicted for violating 18 U.S.C. § 1361: *United States v. Komisaruk*, 885 F.2d 490, 496 (9th Cir. 1972), *United States v. Simpson*, 460 F.2d 515, 516-17 (1972), *United States v. Carlson*, No. No. 2:10-cr-00298, 2011 WL 13141452 (D. Id. Sept. 15, 2011), and *United States v. Jones*, 607 F.2d 269 (9th Cir. 1979). *Id.*

Petitioner cites these cases to suggest that the statute can be violated without use of physical force. However, a closer examination of the cases is revealing. First, this Court notes that none

---

[1] As Petitioner notes, "vandalism" means the "willful or ignorant destruction of public or private property, exp. of artistic, architectural or literary treasures." Dkt. 99, 4 (quoting *Vandalism*, *Black's Law Dictionary* (11th ed. 2000)).

11

of these cases are controlling. In *Komisaruk*, the defendant was convicted for "willfully damaging government property in an amount exceeding $100" as she "intentionally vandalized an Air Force computer which was assigned to the United States space shuttle program." 885 F.2d at 491. The damage she caused "exceeded $700,000.00." *Id.* And in *Simpson*, the defendant therein was convicted of "destroy[ing] government property valued in excess of $100" as he "surreptitiously gain[ed] access to [the Local Board of the Selective Service System's] Board Room, . . . opened one of the file drawers, doused the contents with his gasoline, ignited a match, and set the files ablaze." 460 F.2d at 516. In *Carlson*, the defendant and his co-defendants were indicted for "willful injury or depredation of property of the United States" for "spray paint[ing] the rock face at the Red Elk Rock Shelter located on land belonging to the United States and damaged the property in an amount exceeding $100." *Id.* at *1.[2] And in *Jones*, the defendants were charged with "injur[ing] the Indian ruins [by means of pick and shovel,] located in the Brooklyn Basin of the Cave Creek Range District of the Tonoto National Forest, causing damage to the property in excess of $100." *Id.* at 270.[3]

In consideration of the case at bar, the divisibility of 18 U.S.C. § 1361, and the higher damages threshold that Petitioner is subject to, the Court does not find that these cases reflect that physical force is not *ipso facto* required to violate 18 U.S.C. § 1361. Rather, it cannot be said that all acts of vandalism run afoul of 18 U.S.C. § 1361.

Lastly, the Government asserts that Petitioner "conflates the quantum of force used to commit a crime with the object of the force itself;" in analyzing Petitioner's vandalism examples,

---

[2] This case is even more distinguishable from the others as it is not clear as to whether the defendants were charged with "willfully injuring" or "depredation of" government property.

[3] However, the focus of *Jones* concerns whether the district court improperly granted the defendant's motion to dismiss the indictments.

12

the Government replaces the object of the vandalism with a person to demonstrate a violation of the statute requires physical force. Dkt. 100, 16-20. In reply, Petitioner relies on *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019). Dkt. 101, 2-6. The Court does not find this analytical point advanced by the Government particularly compelling and will not address it further but does comment that *Bowen* is distinguishable. There, the Tenth Circuit analyzed whether witness retaliation constitutes a crime of violence and not a property crime. *See generally*, 936 F.3d 1091.

The Government points out that "there is some doctrinal oddness that results from applying the definition of violent force that appears in *Curtis Johnson* to injury-to-property crimes" and observes that "*Curtis Johnson* and its progeny almost exclusively involve crimes against the person, not crimes against property." *Id*. at 16. Though that may be true, it is significant that § 924(c)'s "force clause" is not limited to crimes against the person. Rather, that statute expressly contemplates crimes against property.

For these reasons, Petitioner's 18 U.S.C. § 1361 conviction is indeed a "crime of violence" pursuant to the force clause contained in § 924(c) as it requires the use, attempted use, or threatened use of force.

## IV. Conclusion

Accordingly, Petitioner's violation of 18 U.S.C. § 1361 constitutes a "crime of violence" under the still-valid force clause. Thus, Petitioner's 18 U.S.C. § 1361 conviction remains a valid predicate for Petitioner's 924(c) conviction. Therefore, this Court DENIES Petitioner's 2255 Motion.

It is SO ORDERED.

Alexandria, Virginia
December 30, 2020

/s/
Rossie D. Alston, Jr.
United States District Judge

13